UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LAKELAND REGIONAL HEALTH SYSTEM** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 12-600 (RJL)** |
| | ) | |
| **KATHLEEN SEBELIUS,** *Secretary* | ) | |
| *Department of Health and Human Services* | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

(July 16, 2013) (Dkts. ##9, 11)

Plaintiff Lakeland Regional Health System ("plaintiff" or "Lakeland") brought the

present action against Kathleen Sebelius, the Secretary of Health and Human Services

("defendant" or "the Secretary") pursuant to Title XVIII of the Social Security Act, 42

U.S.C. §§ 1395–1395kkk-1 (the "Medicare Act") and the Administrative Procedure Act,

5 U.S.C. § 551 *et seq.* (the "APA"), challenging the defendant's final administrative

decision denying Medicare reimbursement for certain bad debts incurred by plaintiff

during the 2005 fiscal year.   Defendant held that the debts could not be deemed

"uncollectible" under 42 C.F.R. § 413.89(e) while pending at an outside collection

agency.   Plaintiff argues that defendant's position constitutes a change in policy in

violation of 42 U.S.C. § 1395f note (hereinafter "Bad Debt Moratorium" or

1

"Moratorium").   In the alternative, plaintiff contends that defendant's decision is arbitrary, capricious, and inconsistent with the governing statute and regulations.   Before the Court are the parties' cross motions for summary judgment.   Upon consideration of the parties' pleadings, relevant law, and the entire record in this case, defendant's summary judgment motion is GRANTED and plaintiff's motion is DENIED.

## BACKGROUND

**A.      Statutory and Regulatory Background**

**1.      The Medicare Program and Bad Debt Reimbursements**

The Medicare Act provides health insurance benefits to eligible elderly and disabled persons.   42 U.S.C. § 1395 *et seq.*   The Centers for Medicare and Medicaid Services ("CMS"), formerly the Health Care Financing Administration ("HCFA"), administers the Medicare program for the Secretary.   42 U.S.C. § 1395kk; 42 C.F.R. § 400.200 *et seq.*   Medicare providers like plaintiff enter into written agreements with the Secretary to provide services to eligible beneficiaries.   42 U.S.C. § 1395cc.   Pursuant to these agreements, providers are reimbursed for services rendered to eligible beneficiaries. *See id.*   The Secretary has broad discretion to determine which "reasonable costs" may be reimbursed to Medicare providers, *see* 42 U.S.C. § 1395x(v)(1)(A), and what documentation is required from providers, *see* 42 U.S.C. § 1395g(a).   The Secretary

contracts with fiscal intermediaries[1] to determine and process reimbursement payments to providers.   42 U.S.C. § 1395h.

At the close of each fiscal year, providers submit cost reports to their fiscal intermediaries for determination of program reimbursement.   42 C.F.R. §§ 413.20,.24. After auditing the report, 42 C.F.R. § 1395g, the fiscal intermediary issues a Notice of Program Reimbursement ("NPR"), 42 C.F.R. §§ 405.1801(a)−.1803.   A hospital may challenge an NPR by requesting a hearing before the Provider Reimbursement Review Board ("PRRB").   42 U.S.C. § 1395oo(a).   The PRRB's decision is subject to review by the Administrator of CMS.   42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875(a)(1).   The Administrator's decision constitutes a final agency decision subject to judicial review. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877.

Medicare requires its beneficiaries to bear a portion of the cost of covered services in the form of deductibles and coinsurance.   42 C.F.R. §§ 409.80−.83.   In order to prevent shifting the costs of covered services to non-Medicare patients, the Medicare program reimburses hospitals when they are unable to collect coinsurance and deductible payments from Medicare beneficiaries.   42 U.S.C. § 1395x(v)(1)(A); 42 C.F.R. §§ 412.115(a), 413.89(a), (d).   The regulations governing bad debt reimbursement were

---

[1] In October 2005, Part A fiscal intermediaries became known as Medicare administrative contractors.   *See* Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, § 911(b), 117 Stat. 2385 (Dec. 8, 2003).

written to incentivize providers to practice strong and efficient collection efforts before

seeking bad debt reimbursement from the Medicare program:

> A bad debt must meet the following criteria to be allowable:
>
> (1)     The debt must be related to covered services and derived from deductible and coinsurance amounts.
>
> (2)     The provider must be able to establish that reasonable collection efforts were made.
>
> (3)     The debt was actually uncollectible when claimed as worthless.
>
> (4)     Sound business judgment established that there was no likelihood of recovery at any time in the future.

42 C.F.R. § 413.89(e); AR at 580.   42 C.F.R. § 413.89(e) was first issued in 1966.   *See*

*District Hosp. Partners v. Sebelius*, Civ. Action No. 11-1717, slip op. at 15 (D.D.C. Mar.

26, 2013) (Kessler, J.).

Chapter 3 of the Medicare Provider Reimbursement Manual, Part I ("PRM"),

contains the Secretary's guidance for interpreting 42 C.F.R. § 413.89(e).   *See* AR at

582−85.   This manual was first issued in 1968.   *See Foothill Hosp.−Morris L. Johnston*

*Mem'l v. Leavitt*, 558 F. Supp. 2d 1, 11 (D.D.C. 2008).   PRM § 308 mirrors 42 C.F.R. §

413.89(e), outlining the four main criteria that must be satisfied for reimbursement.   AR

at 582.   PRM § 310 discusses the "reasonable collection effort" providers must undertake

and document before seeking bad debt reimbursement.   AR at 582−83.   PRM § 310.A

states that providers may employ the assistance of a collection agency.   AR at 582−83.

PRM § 310.B requires "document[ation] in the patient's file by copies of the bill(s) and

4

[other letters or reports]."   AR at 583.   PRM § 310.2 provides for a "presumption of

noncollectibility":

> If after reasonable and customary attempts to collect a bill, the debt remains
> unpaid more than 120 days from the date the first bill is mailed to the
> beneficiary, the debt may be deemed uncollectible.

AR at 583.   PRM § 314 states that a provider "should have the usual accounts receivable

records-ledger cards and source documents to support its claim" and "[u]ncollectible

deductibles and coinsurance amounts are recognized as allowable bad debts in the

reporting period in which the debts are determined to be worthless."   AR at 584.   PRM §

316 precludes double-recovery where CMS has reimbursed a provider for a bad debt that

the provider is later able to collect from a beneficiary.   AR at 584−85.

The Secretary has also issued guidelines for fiscal intermediaries to follow in

administering the reimbursement system.   For example, a 1985 audit guideline regarding

the use of outside collection agencies states:

> Where a provider utilizes the services of a collection agency . . . . [i]f
> reasonable collection effort was applied, fees the collection agency charges
> the provider are recognized as an allowable administrative cost of the
> provider.

Hospital Audit Program § 4499, Ex. 15 (AR at 349).   The 1985 audit guideline further

states that "[t]o determine the acceptability of collection agency services," the

intermediary should ensure that "both Medicare and non-Medicare uncollectible amounts

are handled in a similar manner" and the patient's file "is properly documented to

substantiate the collection effort."   *Id.*

In 1989, the Secretary published a Medicare Intermediary Manual ("MIM") instructing fiscal intermediaries that:

> If the [bad] debt is written-off on the provider's books 120 days after the date of the bill and then turned over to a collection agency, the amount cannot be claimed as a bad debt on the date of the write-off.   It can be claimed as a bad debt only after the collection agency completes its customary collection effort.

MIM, 13−4, §§ 4198, 4199 (AR at 381, 407−08); *Foothill*, 558 F. Supp. 2d at 10.   An HCFA policy memorandum dated June 11, 1990 provides further guidance on the bad debt policy set forth in the PRM:

> [U]ntil a provider's reasonable collection effort has been completed, including both in-house efforts and the use of a collection agency, a Medicare bad debt may not be reimbursed as uncollectible.   This is in accordance with the fourth criterion in [PRM] section 308, which provides that an uncollected Medicare account cannot be considered an allowable Medicare bad debt unless sound business judgment established that there is no likelihood of recovery at any time in the future.   We have always believed that, clearly, there is a likelihood of recovery for an account sent to a collection agency and that claiming of a Medicare bad debt at the point of sending the account to the [collection] agency would be contrary to the bad debt policy in [PRM] sections 308 and 310 . . . .

HFCA Clarification of Bad Debt Policy ("HFCA Memo"), June 11, 1990 (AR at 414).

CMS also issued a Joint Signature Memorandum in 2008 stating:

> In accordance with the regulation/policy in effect prior to the August 1, 1987, moratorium, until a provider's reasonable collection efforts have been completed, including both in-house efforts and the use of a collection agency, unpaid deductible and coinsurance amounts cannot be recognized as a Medicare bad debt.

Joint Signature Memorandum re: Clarification of Medicare Bad Debt Policy/Bad

Debt Policy Related to Accounts at a Collection Agency ("JSM"), May 2, 2008

(AR at 117).

### 2.     The Bad Debt Moratorium

In 1987, Congress enacted what is herein referred to as the "Bad Debt

Moratorium," prohibiting the Secretary from making changes to the agency's bad debt

policy in effect on August 1, 1987.   *See Foothill*, 558 F. Supp. 2d at 3.   The Moratorium

states:

> In making payments to hospitals under title XVIII "42 USC 1395f note" of the
> Social Security Act, the Secretary of Health and Human Services shall not
> make any change in the policy in effect on August 1, 1987, with respect to
> payment under title XVIII of the Social Security Act to providers of service for
> reasonable costs relating to unrecovered costs associated with unpaid
> deductible and coinsurance amounts incurred under such title (including
> criteria for what constitutes a reasonable collection effort).

Omnibus Budget Reconciliation Act of 1987, Pub. L. No. 100-203, § 4008(c), 101

Stat. 1330 (reprinted in 42 U.S.C. § 1395f note).[2]

--------

[2] In 1988, Congress amended the Moratorium to further define "reasonable collection
effort" to include "criteria for indigency determination procedures, for record keeping,
and for determining whether to refer a claim to an external agency."   Technical
Miscellaneous Revenue Act of 1988, Pub. L. No. 100-647, § 8402, 102 Stat. 3798
(reprinted in 42 U.S.C. § 1395f note).   In 1989, Congress added the following sentence
to the Moratorium:

> The Secretary may not require a hospital to change its bad debt policy if a
> fiscal intermediary, in accordance with the rules of August 1, 1987, with
> respect to criteria for indigency determination procedures, record keeping,
> and determining whether to refer a claim to an external collection agency,

**B.      Factual and Procedural Background**

Plaintiff hospital provided covered services to Medicare beneficiaries during the

fiscal year ended September 30, 2005 ("FY05").   Some of the beneficiaries failed to pay

the hospital coinsurance and deductibles.   Plaintiff first made internal efforts to collect

the debts.   AR at 121−22, 556.   Plaintiff subsequently wrote the debts off as

uncollectible and referred them to an outside collection agency.   *Id.*   While collection

efforts at the outside agency were still pending, plaintiff submitted to its fiscal

intermediary, National Government Services ("NGS"), an FY05 cost report including the

bad debt write-offs.   On August 28, 2007 and September 15, 2008, NGS issued an initial

and corrected NPR, respectively, regarding plaintiff's FY05 cost report.   AR at 90.

NGS disallowed payments for debts plaintiff sent to the outside collection agency, which

had not been returned to plaintiffs as uncollectible.   *Id.*

Plaintiff timely appealed the corrected NPR to the PRRB, arguing that it had met

all of the statutory criteria for bad debt reimbursement, or in the alternative, that the NGS

decision constituted a change in policy in violation of the Bad Debt Moratorium.   AR at

647−84.   Following a hearing on the matter, AR at 251−86, the PRRB concluded that

NGS' decision was erroneous, AR at 86−96.   The Administrator of CMS elected to

---

has accepted such policy before that date, and the Secretary may not collect
from the hospital on the basis of an expectation of a change in the hospital's
collection policy.

Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, § 6023, 103 Stat.

review the PRRB decision.   AR at 81−82.   On February 16, 2012, after receiving

comments from CMS and plaintiff, AR at 18−80, the Administrator reversed the PRRB's

decision and upheld NGS' adjustments disallowing plaintiff's claimed bad debts, AR at

1−17.   On April 16, 2012, plaintiff filed the instant action, challenging the

Administrator's decision.   *See* Compl. [Dkt. #1].

## STANDARD OF REVIEW

The Medicare Act provides for judicial review of the Administrator's final

decision under the APA.   42 U.S.C. § 1395oo(f)(1).   Under the APA's strict standard of

review, the Court may set aside agency actions, findings, and conclusions that are

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

5 U.S.C. § 706(2)(A); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402,

414 (1971).   Factual conclusions may be overturned if "unsupported by substantial

evidence in a case . . . reviewed on the record of an agency hearing provided by statute."

5 U.S.C. § 706(2)(E); *Overton Park*, 401 U.S. at 413 n.30.

An agency action may be invalidated under the arbitrary and capricious standard

only if it is "not rational and based on consideration of the relevant factors."   *FCC v.*

*Nat'l Citizens Comm. for Broad.*, 436 U.S. 775, 803 (1978).   When the agency action at

issue is "the construction of an administrative regulation . . . deference is even more

clearly in order."   *Udall v. Tallman*, 380 U.S. 1, 16 (1965).   "[T]he agency's

---

2167 (reprinted in 42 U.S.C. § 1935f note).

interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation," especially where "the regulation concerns a complex and highly technical regulatory program." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (quotations and citations omitted). However, "[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant [heightened] deference." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000).

Under the substantial evidence standard, this Court must "accept the agency's factual findings if those findings are supported by substantial evidence on the record as a whole." *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992). The Supreme Court has defined "substantial evidence" as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619–20 (1966) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* at 620. If the Secretary's "choice between two fairly conflicting views" is based on substantial evidence, the choice must be upheld even if "the court would justifiably have made a different choice had the matter been before it *de novo*." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).

## ANALYSIS

The Administrator found that it has always been the Secretary's policy that accounts pending at collection agencies cannot be written off as bad debts until collection activity has terminated ("Policy").  *See* AR at 13−14.  This finding is supported by substantial evidence in the record as a whole including the plain language of 42 C.F.R. § 413.89(e), interpretive guidance issued by the Secretary before and after the Bad Debt Moratorium, and past administrative practice.

The Secretary's Policy is encompassed by 42 C.F.R. § 413.89(e), which expressly provides that a debt is not reimbursable unless it is "actually uncollectible when claimed as worthless" and "[s]ound business judgment established that there was no likelihood of recovery at any time in the future."  42 C.F.R. § 413.89(e).  Where, as here, an outside collection agency continues collection efforts on behalf of a provider, these criteria cannot be met.  *See Battle Creek Health Sys. v. Leavitt*, 498 F.3d 401, 411 (6th Cir. 2007) ("The very fact that a collection agency was still attempting to collect the bad debts at issue indicates that these debts had not yet been determined to be 'actually uncollectible when claimed as worthless' and certainly contraindicates that '[s]ound business judgment established that there was no likelihood of recovery at any time in the future.'").  After all, what provider exercising sound business judgment would spend his precious resources on the fool's errand of pursuing an uncollectible debt with no likelihood of

future recovery?   By prohibiting double-recovery, PRM § 316 eliminates any incentive a

provider might conceivably have to simultaneously pursue collection from a beneficiary

and reimbursement from CMS.   *See Battle Creek,*, 498 F.3d at 413 (6th Cir. 2007)

("[PRM § 316 is a] common-sense principle [that] merely recognizes that if a provider

recovers amounts previously included in allowable bad debts, it must reduce reimbursable

costs in the period during which the debt was recovered by the same amount.").

In addition to 42 C.F.R. § 413.89(e), the Secretary's Policy is reflected in the

agency's pre- and post- Moratorium interpretive guidance.   MIM § 4198 expressly instructs

that bad debts may be claimed "only after the collection agency completes its collection

effort."   MIM § 4198 (AR at 381).   The record contains substantial evidence that this has

"always" been the Secretary's Policy, consistent with the criteria of 42 C.F.R. § 413.89(e)

as reiterated in PRM § 308.   *See* HFCA Memo (AR at 414); *see also* JSM (AR at 117)

(characterizing the Policy as "longstanding").   Nothing in the PRM suggests that the

Secretary took a divergent approach to debts pending at collection agencies before August

1, 1987.   The plain language of PRM § 310.2 creates a discretionary presumption of

noncollectibility and does not foreclose the possibility that a debt may still be deemed

collectible after 120 days.   *See* PRM § 310.2 (AR at 340); *see also Battle Creek*, 498

F.3d 401 at 411.   Plaintiff's interpretation of PRM § 310.2 as mandatory would negate

the third and fourth criteria of 42 U.S.C. § 413.89(e).   *See Battle Creek*, 498 F.3d 401at

11−12.   Where, as here, a provider continues collection efforts with an outside agency

following 120 days of internal effort, PRM § 310.2 is inapposite and PRM Sections 310.B and 314 require documentation prior to reimbursement.   Here, plaintiff improperly relied on PRM § 310.2 and sought premature reimbursement absent proper documentation.

The Secretary's audit guidelines from 1985 also reflect the Secretary's Policy. *See* Hospital Audit Program § 4499, Ex. 15 (AR at 349).   The guidelines allow a provider to recoup fees paid to an outside collection agency "as an allowable administrative cost" only "[i]f reasonable collection effort *was* applied."   *Id.* (emphasis added).   The use of the past tense ("*was* applied") precludes reimbursement prior to the application of reasonable collection effort.   The guidelines further state that the patient's file must be "properly documented to substantiate the collection effort."   *Id.*   Here, plaintiff prematurely sought reimbursement at the outset of the outside agency's collection effort, before a valid determination of collectability or uncollectibility could be made, and without proper documentation.

It is not, as plaintiff contends, fatal, *per se*, that the Secretary's Policy is not explicitly set forth in a pre-Moratorium writing.   The interpretive guidance in place on August 1, 1987 "did not purport to be a comprehensive review of all conditions that might be placed on reimbursement of" Medicare bad debts in the Secretary's enforcement of 42 C.F.R. § 413.89(e).   *See Thomas Jefferson Univ.*, 512 U.S. at 516.   Therefore, it cannot logically be inferred that the Secretary either lacked a policy to disallow reimbursement of accounts pending at collection agencies or had a contrary policy.   *See id.*

Finally, plaintiff alternatively argues that the Court should invalidate the Administrator's decision as arbitrary, capricious, and inconsistent with the governing law. I disagree.   Because it is based on an interpretation of an agency regulation, the Administrator's decision is entitled to great deference.   *Thomas Jefferson Univ.*, 512 U.S. at 512.   Here, that decision is consistent not only with the plain language of 42 C.F.R. § 413.89(e) and the agency's interpretive guidance, but also with the agency's administrative practice.   Indeed, to date, the Secretary has consistently applied the Policy, with one exception: the *Lourdes Hospital* case.   *See Mesquite Cmty. Hosp. v. Blue Cross and Blue Shield Ass'n*, CMS Admin. Decision (Apr. 18, 2007) at 10 (noting that a policy allowing providers to write off bad debts pending at a collection agency "would not have been in accordance with the rules in effect prior to August 1, 1987"); *Foothill Presbyterian Hosp. v. Blue Cross and Blue Shield Ass'n*, CMS Admin. Decision (Feb. 14, 2007) at 7 n.7 (concluding that the Moratorium did not preclude application of the Policy); *Battle Creek Health Sys. v. Blue Cross and Blue Shield Ass'n*, HCFA Admin. Decision (Nov. 12, 2004) at 7 (citing the 1990 HFCA Memorandum as evidence of the Policy). *But see Lourdes Hosp. v. Blue Cross and Blue Shield Ass'n*, HCFA Admin. decision (October 25, 1995) (AR at 419–23) (allowing reimbursement where a provider wrote off accounts as bad debts prior to 120 days of collection effort and subsequently sent those accounts to a collection agency).   But the HCFA Administrator's 1995 decision in *Lourdes* was an isolated ruling; an outlier inconsistent with the Secretary's

Policy as cited in prior administrative decisions.   *See e.g.*, *Humana Hosp. v. Aetna*, HFCA Admin. Decision (Sept. 11, 1992) (citing policy that "until a provider's reasonable collection effort has been completed, including both in-house efforts and the use of a collection [agency], a Medicare bad debt may not be reimbursed as uncollectible").

## CONCLUSION

Thus, for all of the foregoing reasons, the Court GRANTS defendant's Motion for Summary Judgment and DENIES plaintiff's Motion for Summary Judgment.   An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge